We are ready to hear arguments in the case of Alabassi v. T.I.B. Insurance Brokers. May it please the court, my name is Cameron Hunter and I represent the appellant Omar Alabassi on appeal today. The question presented to this court on appeal is whether expert testimony is required to establish the elements of duty and breach and a claim for negligence against an insurance agent. Establishing the standard of care applicable to a licensed professional in Colorado often requires expert testimony. The oft-repeated rationale for this requirement is that the standard of care in such a situation implicates specialized or technical knowledge that is outside the common knowledge and experience of ordinary jurors. However, courts have just as consistently held that where the relevant standard of care does not implicate such specialized knowledge, expert testimony is not required. Put another way, where the applicable standard of care is within the understanding of ordinary jurors, expert testimony is not necessary. In Colorado- Suppose that line of cases in Colorado is typically stuff like valuation. People can testify as to the value of their house. Leaving a sponge in in a malpractice case. Right, exactly. Ray zips a lock into a type of situation. Simple stuff. Does this case fit within that category of cases? Certainly, Your Honor. And so what we're here to talk about today- I didn't expect you to say that, but tell me why. I'm going to back that up to the best of my ability. And so this was a situation where the appellant, Omar Al-Abbasi, retained the services of an insurance agent, helped him procure some insurance coverage. Agent or a broker? It was an agent. In his deposition, he used both terms, so I'm going to stick with agent for now. But essentially this was to get auto insurance coverage, specifically commercial coverage. And as part of that process, the employee of Appellee, Mr. Joseph Ortiz, was the individual that helped Mr. Al-Abbasi. And at the root of this controversy is that Mr. Ortiz assisted Mr. Al-Abbasi in completing a Colorado coverage selection form. And in fact, there are two forms selected that are contradictory. On the one hand, Mr. Ortiz assisted Mr. Al-Abbasi in requesting minimum insurance coverage in Colorado, which is, of course, $25,000, which Mr. Ortiz said that he knew, and that simultaneously requested $50,000 in coverage. And again, Mr. Ortiz testified to all this during his deposition. And so at the end of the day, what the question is, is whether this was an inconsistent form. So we just look at the form and say, it's inconsistent to check both boxes? Correct, Your Honor. And so that's why it's appellant's position that this certainly is not the sort of case where expert testimony is needed to explain to a jury, hey, these are different numbers. And again, there is the statute that says, hey, licensed professionals often require expert testimony. But again, the frequent exception is not if it doesn't require specialized or technical knowledge, which is the case here. Does somebody have to testify about uninsured motorist coverage? Not necessarily, Your Honor. I mean, essentially what we'd be looking at is, what's the minimum coverage? And so multiple Colorado court opinions. And an average layman would know that just off the top of their head. Well, certainly there's two things that can be helpful here. So the first, of course, is that the district court, the judge, can instruct the jurors on the law. But secondly and more importantly, Mr. Ortiz said in his deposition as much. And Colorado courts have failed that where expert testimony is not necessary, lay witness testimony can serve to establish the standard of care. And facts such as this, such as the minimum insurance coverage in Colorado. And more specifically, that Mr. Ortiz knew that these numbers were not identical. And yet somehow failed to catch the contradiction in terms that was presented by the coverage form. And so that being the case, I mean, it's appellant's position that the standard applicable here is one of reasonable care. And so essentially, the case that is most analogous to the present case is the case in Golden Rule Insurance Corporation v. Greenfield. And in that case, an insurance agent, again, assisted an applicant in completing her insurance application. However, a mistake was made and the application was submitted with contradictory information. Critically, the Greenfield court ruled that even without expert testimony, a reasonable the insurance agent... Isn't that dicta, that next line that you're just reading? Your Honor, Judge Mache... Because in that case, there was an expert proffered. That's correct, Your Honor. And so that was actually one of the things that Judge Mache also mentioned in the trial below. But one of the parts of appellant's contentions here is that this is not, this specific question is not one that has received a direct answer in Colorado, specifically whether expert testimony is needed to establish the standard of care applicable against an insurance agent. And so Colorado law has held, both at the federal and state level, that where that's the case, dicta from either federal district courts or analogous jurisdictions is extraordinarily helpful in shedding light on, well, do we need expert testimony here or not? And so appellant would concede, yes, this does appear to be dicta, but it is extraordinarily helpful given the closeness of the facts from the Greenfield case to this case. Is this case about $25,000 or is it about whether the policy should have provided for an amount equal to the liability coverage? So of course it's unclear what would have happened if... I'm not asking, just look, how about answering my question in there and answer whatever you want to answer. Could you ask me again? Is it about $25,000? Is the amount at stake here $25,000 or is it greater? Greater, Your Honor. So essentially... It's about whether he should have advised him to get an amount equal to his own liability coverage. Not strictly speaking, Your Honor, because one of the things you're pulling off is that there's been numerous Colorado court decisions that says the responsibilities of an insurance agent to advise are very limited, right? And that's not exactly what we're talking about here. We're not saying that Mr. Ortiz should have told Mr. Alabassi, hey, you could have more coverage if you want, and just failed to do that, even though it does appear that that didn't happen. Rather, what we're saying is that in failing to submit a valid and document free of inconsistency, Mr. Ortiz breached his duty of care, the duty of reasonable care to Mr. Alabassi, and therein lies the claim for negligence. I understand, but I restate my question. Is the amount at stake $25,000 or some amount greater than that? It would be an amount greater than that, Your Honor. So essentially what happened here was... You're saying he should have advised him that you can, for a few dollars more a month or whatever, bump your coverage up to $500,000 or $300,000 or a million or whatever amount of liability coverage you choose to protect yourself for your own negligence, you can get it for the negligence of others. And I understand what you're saying, Your Honor, and no, that's not appellant's position. So appellant's position is that Mr. Ortiz should have declined to send the defective Colorado coverage selection form over to the insurance company. Had they done that, one of the provisions of the form is, hey, if you don't turn in this form, you will have coverage limits equal to your liability coverage. And Mr. Alabaster had liability coverage in the amount of $1 million. All right. So what's at stake potentially then is the million, not $25,000. Correct, Your Honor. Whoa. That should have been a pretty easy answer to my question. I apologize, but we got there eventually. So thank you for your patience, Your Honor. So getting back to the primary question here is whether or not it's a reasonable standard of care or something different, some professional standard of care. You mean if this guy hadn't done anything, he'd have had a million bucks of coverage and he hires somebody to fill a format checking all kinds of boxes. Oh, there's a box. I must put a check in it. If I'm understanding your question correct, Your Honor. Thank you. So one of the things that's argued in appellee's brief is that, again, it's not a standard of reasonable care, but a standard of professional care. And I apologize, Your Honors, I might be speaking too close to the mic. But there are a number of problems with this argument. And essentially what we're looking at is going to be that in Colorado, a licensed professional can be subject either to a standard of reasonable care or to the standard of professional care, depending on the conduct in question. There are a number of cases that parse apart, hey, certain activities are certainly going to be subject to the professional care standard while the reasonable care may apply in other circumstances. The Quintana case is a good example of this, where it was a case involving a blood bank and the court ultimately found that, hey, any medical things associated with moving the blood around or how you handle that, that's a matter of professional care. That requires expert testimony. But if it's something on the business side, say advertising, something like this would certainly be within the purview of ordinary lay jurors. And so a similar dichotomy is taking place here, where perhaps it's conceivable that there's some activities that insurance agents could engage in that would be subject to the standard of professional care and that would require expert testimony. But the facts presented in this case simply don't rise to that level. In this case, did you file a certificate of review under the Colorado requirement when you're talking about professional negligence and liability? We did, Your Honor. So how does that square with the arguments you're making now, that this is not that kind of issue, that a lay person could determine it? Correct, Your Honor. Essentially, it was done out of an abundance of caution. Sort of at the beginning, at the genesis of the case, it appeared, hey, maybe this is something we should do. After doing that and looking into the issue further, it appeared, no, this is the sort of thing that certainly does not require expert testimony. And rather than incur additional expenses and costs on behalf of our client, the decision was made, look, Colorado case law appears to not require expert testimony because the facts giving rise to this claim for negligence were so simple and did not require special or fantastic or specialized or technical knowledge. In Your Honors, I have just a few minutes left. Unless there's any pressing questions, I would reserve the remainder of my time for rebuttal. Thank you. If it pleases the Court, good morning. Good morning. My name is Michael Petrovsky, and I represent the appellee, TIB Insurance Brokers. It's our position that Judge Mage made the exact correct determination in issuing the summary judgment order at the trial court level due to plaintiff's failure to endorse an insurance expert necessary to establish standard of care. Judge Mage was clear about that in his order as well as during questioning to then plaintiff's counsel during the summary judgment. What would the expert have been required to testify, that you shouldn't check two boxes in an application for insurance? A key question, Judge Lucero. The insurance expert, which, in fact, we have one that's retained, we have a report that we would have introduced if the time had come, explains that in the context of commercial auto insurance, those limits, instead of being expressed in split limits, what we might see in insurance policy of $25,000 per individual, $50,000 per accident, they're uniformly expressed as single limits in the context of commercial auto insurance. That's why the $25,000 figure, which would be the ordinary minimum, it's then expressed, instead of split limits, it's expressed as single limits in commercial auto policies. I think that plaintiff or appellant at this phase has a misunderstanding of the difference between those two boxes. Just because they're not identical does not mean that they're in conflict. And, in fact, checking that box was an exercise of professional judgment by Mr. Ortiz, the agent in this case, because this was specific to the realm of commercial auto insurance. We are, of course, requesting that the court affirm Judge Mage's decision. But what I would like to do is sort of refocus the discussion at this point about standard of review. As I understand from briefings, there's no dispute. The true standard of review here is abusive discretion. There is no dispute that the determination as to the necessity of expert testimony was within the sound discretion of the trial court. We have Keller, Fogel, Giron, other cases cited in the briefing. They all tell us that. There's no dispute about that. But it's not unguided discretion. There is case authority, isn't there? What's your best case? Sure. Our best cases essentially establish the principle as to when the exercise or the need for expert witnesses is necessary, such as Heiss or Melville or Zurich. Even if they come to different conclusions, I think they clearly articulate a uniform test that's meant for the trial court to exercise. And I think it's left within the trial court's discretion because that judge is most intimately familiar with the facts and circumstances that underlie the events. They're going to have to actually oversee a trial at some point. And they are the ones that need to make sure that the jury is not left blindly guessing. Here, Judge Mage clearly felt that professional care was implicated. Judge Mage had heard our arguments about the complexity of marking those boxes. And he determined that an expert was necessary. So I guess your point is that it's not, I mean, how do we decide what is at issue here? Checking the boxes versus understanding the form, which is kind of what I understand your argument to be, that the form is more complex. Is that subject to abusive discretion as well? Or do we look at that afresh? Right. I believe Judge Mage agreed with our argument that it required an exercise of professional judgment in filling out but also reviewing that form. So I believe that's where the expert testimony would come into play. But that determination is subject to abusive discretion? Correct. I think determining that expert testimony was needed to understand that process is within the abusive discretion standard. So I guess we shouldn't just look, this is your argument, we shouldn't just look at the form and say, oh, we can understand that. Or it could be understood, we need to defer. I absolutely agree, Your Honor. I would certainly agree that a layman could see that the numbers 25 and 50 are different, no argument there. But the impact of what that means in this context an ordinary person would not understand. Because marking those boxes requires a professional knowledge of the intersection between Colorado state law regarding minimums, but with insurance industry norms and standards, specifically in the realm of commercial auto insurance. Let me ask this question, if I'm not stumping on your question, Judge Allison. Judge Iyad, excuse me. How much more would it have cost to bump up those limits to a million dollars rather than the minimum? I don't know the exact figure, but I believe it's relative. Not the exact, but like if it's $5 versus $5.50, I mean, I'm going to become concerned. But how much? Sure, my understanding is it would be relatively minimal, but I think it's important to correct some. But don't you think it's important for an insurance agent or broker to say to their clients, Mrs. Briscoe, if you pay $3 more, you're going to get a million dollars of uninsured coverage. But if I check this box, you're going to save $3, but you're only going to get $50? It's a very good question, Your Honor. It's a very good question. So how about the answer? The answer would be that very specifically, Mr. Albasi in this case, directed that he wanted the minimum coverage. He's routinely reduced his UIM coverage, both personally and professionally. We've seen this in his past insurance policy. My question is, should an insurance agent advise their insured client that for a three minimal amount, you can bump coverage to protect yourself up to a million dollars rather than to protect yourself for $25,000 if some drunk guy hits you and doesn't have insurance? Sure. And Your Honor, I believe case law cited in the briefing indicates that that is not the duty of the insurance agent. That's not my question, is whether it's a duty. My question is, in the exercise of proper judgment, shouldn't an agent do that? I would say so, yes, Your Honor. And isn't that the reason that if you don't check any boxes, it's going to bump up? It's so obvious that if you don't check any boxes, it's going to bump up to your selected liability coverage rather than some nominal amount. Right, and for an additional expense in premium. Yeah, of three or five bucks or whatever. Yeah, I apologize again. I don't have that exact figure. I don't know exactly what it would be. But again, Mr. Ortiz was following the specific direction. I think Appellant's Counsel even mentioned that he was seeking the minimum coverage. He testified in his deposition, I wanted the minimum amount to allow me to operate my company under Colorado law. Right, I understand. But shouldn't, isn't it relatively obvious that somebody should tell you that for a nominal amount, you can get your maximum coverage rather than some minimum amount that you may think is what you want? In this circumstance, I know there was a past relationship between these two. They had worked together to try to bind a policy in the past. But further, I think there's a clear understanding from the record in this case, Mr. Alabasi, he knew that. He knew how insurance works. He's been purchasing commercial auto insurance, running his own company for the better part of 20 years. Now, does that help you or hurt you? I think that helps us. It seems to me that that puts him in a better position to testify as a lay person without having to hire a highfalutin expert to tell you that for a few dollars more, you can protect yourself. Are we talking about Mr. Ortiz, the agent, or Mr. Alabasi, the plaintiff? The plaintiff. The plaintiff. Well, the plaintiff has indicated routinely that he wanted lower coverage. But I think it's also important to understand that even Mr. Alabasi claims he didn't understand how that forms worked. He just merely signed off. He was given a letter explaining the import of the form. He was gone over with the agent. In hindsight, he's simply saying, I don't know how that works. I just did whatever Mr. Ortiz said. It's clear that he had a much more, it's been an understanding of that. But even someone of that ilk who has that experience, if they are able to claim that they don't know how this process works, I don't know how an ordinary person who does not run their own limo service could understand that. A couple more questions. Sure. At the time that Judge Maitch said, this is a case that requires an expert, did he afford the plaintiff an opportunity at that point to obtain an expert? He repeatedly asked them why they had not disclosed one. Yeah, okay. But he, there was never- My question is, did he afford him an opportunity at that point to do it? They never requested one. He did not afford one because one was never requested, neither informally to us or formally to the court. They steadfastly maintained, we don't need an expert and we don't intend to produce one. And it was that point that we moved for summary judgment because frankly, we had a duty to. Because there was a glaring hole in the case they made it clear that they weren't going to change on that. Another reason why we feel it would be unjust or prejudicial as requested in their brief to give them a second bite at the apple to now go back and do that after our client has expended the time and resources to pursue this and after relying upon their repeated steadfast position that they would not be disclosing an expert in relation to insurance. So I just thought you said that he did afford him an opportunity to do it and they affirmatively chose not to do it. Well, they were past their deadline to do so at that point. They never requested any additional time. So their opportunity was, of course, before their deadline to do so. I think he wanted them to ask for more time. They never did so. He may well have granted that. And that being the position at the time, we may well have agreed to that because the case had not gotten this far down the road. So thank you. Sure, absolutely. I think that there's also agreement between the parties as to what the legal standard was. It seems that all the cases that have been cited, they talk about the ordinary realm of everyday persons and professional understanding versus ordinary persons. I don't think we have any disagreement about that. So I think that there's no disagreement, frankly, that the court applied the correct legal standard. I think what happened ultimately is appellants just not happy with the determination. That doesn't mean that the wrong standard was applied. And of course, if we look at the Sprint case, which both parties cite to for the standard for abuse of discretion, the decision by the district court must be arbitrary, whimsical, manifestly unreasonable, or applying an altogether wrong legal standard, like say applying preponderance of the evidence versus beyond a reasonable doubt, something like that. We're talking about the same tests here. So there really, I think, no dispute that the correct legal standard was applied. I think it's also worth looking at the efforts that Judge Mage went to when this issue was put in front of him. We first raised the issue about the deficiency in expert testimony via a motion for determination of law. Judge Mage then called a conference amongst counsel. We talked about the issue. Brief arguments were heard by all counsel. He then said specifically, I want summary judgment briefing on this issue. It was then fully briefed, motion, response, reply. He then went to the step of setting a conference, a hearing on it, at which point he roundly questioned plaintiff's counsel. He then issued a detailed multi-page order explaining the deficiency regarding an expert for standard of care. So I don't know what more Judge Mage could have done at that point. He was very attuned to this. He was very hands-on in how he handled this. He was meticulous to the details of it. Certainly not a case where he acted arbitrarily. Even if the standard was not abuse of discretion, assuming arguendo that it was mere de novo, we would still argue that he applied the correct ruling, that being that there should have been expert testimony here. The Montano case is cited by the appellant, Tenth Circuit case, indicating that for an insurance agent, having undertaken to procure coverage for an insurer, the agent must do so with professional care. Even conceding the Cantana and the Korab cases that acknowledge that sometimes there's an exception to that where mere reasonable care applies, it's still circumstantial. It's dependent upon the facts in front of you. As I discussed earlier, the issue of marking those boxes is much more complex than it appears on the surface. So if it had been the case that Mr. Ortiz wholly failed to submit a document or completely didn't bind coverage, this may have been closer to the case where expert testimony is not required. But given the determination in question, it certainly was required. Even if the standard of mere reasonable care applied, the Kercher case tells us that reasonable care is measured relevant to that profession. It would not be a reasonable ordinary person. It would be a reasonable insurance agent with those duties, training, skills. And again, that's where the knowledge as to how this form works in conjunction with commercial auto insurance comes into play. As has been discussed earlier, the Greenfield decision, Golden Rule v. Greenfield, that was cited by the appellant, Judge Mage considered that, also considered it to be dicta. That was not the true issue before the case. Let me give you a couple of other examples. Let's say a lawyer misses the statute of limitations. And the client, he gets sued by his client. The client says, I don't have to hire an expert to say that a lawyer shouldn't miss the statute of limitations. In that case, would the client need an expert? No, Your Honor. I think the Hansen and the Gueron cases that are cited in the briefing make it clear that that is such an obvious error that an ordinary person would be familiar with. The general concept of All right. So next example, Judge Briscoe's example. A doctor leaves a sponge in the patient's cavity during an appendectomy. What about that one? Right. I think that would be probably not requiring expert testimony. It would fall under the line of Melville and Gorab, which make it clear that even in the context of medical malpractice claims, sometimes there's mere reasonable standard of care that the ordinary person could contemplate. However, that's the narrow exception. And several cases tell us that Now, next example, a insurance agent doesn't tell an insured client, hey, for three bucks more you can cover coverage for a million dollars rather than $25,000. Does he need an expert to say that he should have been told that? I believe that exceeds the duty of what has been brought up in the case law here. And how do you distinguish those three cases? Which case is that? Sorry, one more time, Your Honor. The lawyer who misses the deadline, the doctor who leaves the sponge, and the insurance agent who doesn't tell his client that for a few dollars more, and I don't want to use $3, but nobody will tell me what it is, that for a few dollars more you could have a million dollars worth of coverage. I see I'm out of time. Would you like me to still answer? Go ahead. Absolutely. I think in that circumstance we're again talking about the exercise of professional judgment and an understanding of those dollar figures, the difference in the coverages. I think that's far more complex than merely cutting off the wrong leg, for instance. Thank you. Thank you very much. I appreciate it. Your Honor, as counsel mentioned, at least two things I'd like to follow up on in the limited amount of time that I have. Two reasons that were offered for why this case is disanalogous from say the sponge left in the body or an attorney missing a statute of limitations was that this was a case that was called professional judgment and mention was made of a single limit versus a split limit. It's worth noting that in his deposition, Mr. Ortiz, the agent, did not provide some lucid analysis of why he went with one option versus another. Quite clearly in his deposition it was real. He just didn't catch his mistake. That's number one. Counsel, can I just stop you there? Please. The judge here, though, and correct me if you disagree with this, thought the form was more complex and involved some intersection with law and limits and commercial requirements. Your opposing counsel says that that determination is subject to abusive discretion. I guess you disagree with that, but I'm wondering why. I think we could have arguments in the alternative, Your Honor. Assuming just for the sake of argument that abusive discretion applies, I think I would dissent from what opposing counsel said a minute ago, that all parties would agree that the judge didn't apply, that the judge applied the correct legal standard. We would, of course, say that he did not. This is a situation where it Well, aren't we supposed to determine, and tell me if this is wrong, did he abuse his discretion in determining that this form was more complex than simply checking the wrong or two boxes? You had to have some professional discretion or advice in understanding the form, and that is why there was expert testimony required here. So I'm asking you, did you agree that the determination, whether it's just checking two boxes that are inconsistent versus there was actually some advising going on, is that determination subject to abusive discretion? Yes, Your Honor, I think so. OK, so you would have to show that Judge Maitz abused his discretion in thinking this was a more complex determination. Correct, Your Honor, and there's multiple standards, multiple ways to show an abusive discretion. One is the language that was cited by counsel in terms of whimsical, capricious, that sort of thing, and certainly not accusing Judge Maitz of that. Rather, one of the other alternatives to showing that, again, is showing that a judge applied a wrong legal standard. That is a way to abuse your discretion, and that's what we're arguing here, is that Judge Maitz, in reviewing this form and concluding, only an expert could make sense of this. This requires specialized technical knowledge that that's incorrect. This is the sort of thing that could be interpreted by a lay witness, just like missing a statute of limitations could. And so in terms of that, the second argument offered by counsel was, look, this is a situation where perhaps a lay jury could understand the difference between checking two boxes, but what they can't understand is the ramifications of doing that. And again, not true. The same thing could be said about an attorney who misses the statute of limitations. Perhaps a lay juror would not off the cuff be fully aware of what happens when you miss the statute of limitations, but certainly they could be made to understand that missing a key deadline to a case is a breach of the standard of care. And that's appellant's position here as well, that Mr. Ortiz's sole job was to procure insurance for Mr. Alabassi, and in directing him to select inconsistent and contradictory coverages, he breached his standard of care, which was reasonable care, not a professional care. Again, this is not the sort of thing that requires specialized or technical knowledge. Looking to jurisdictions outside of Colorado has yielded the same result, that there simply are no cases that say, yes, insurance agents, they're just so complex, convoluted, we need experts in order to determine what they're saying. And that's perhaps part of the reason that the duties of insurance agents are so limited, because the amount of expertise required to fulfill their role is that limited. And I see that I'm out of time, unless there's any other questions. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.